**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BASEMENT SOLUTIONS LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-104** |
| | : | |
| **WELLS FARGO BANK, NA** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                          **February 2, 2021**

      Banks hold deposits from small closely held entities owned by partners who may eventually no longer own part of the closely held entity.  The bank's customer remains the depositor entity relative to its bank account absent a change directed by the depositor.  The bank must be careful to avoid getting caught in the middle of an internal dispute between its depositor's partners.  But the bank cannot be held liable for breaching a fiduciary duty to a depositor customer under Pennsylvania law if it follows one allegedly departing partner's direction to the detriment of the remaining partner absent the bank somehow exercising control or dominion over its depositor's business affairs. Banks are not typically fiduciaries in a deposit or creditor relationship.  The relationship is usually at arms-length and governed by the bank's deposit documents.

      We today grant a bank's uncontested motion to dismiss an closely held entity-depositor's claim the bank owed it a fiduciary duty in relation to two of its bank accounts and breached this duty by allowing an allegedly departing partner to open competing bank accounts in the entity's name and transfer funds from original accounts to these allegedly unauthorized accounts opened by the departing partner at another bank branch.  The partners may have valid fiduciary or contract claims against each other able to be resolved in state court, but the depositor does not today state a claim against the bank for breach of fiduciary duty.

## I.  Alleged Facts

Michael Jones and Scott McFarland each owned half of Basement Solutions LLC, a Pennsylvania limited liability company.[1] Basement Solutions opened two bank accounts with Wells Fargo Bank at its Phoenixville, Pennsylvania branch.[2]

On September 11, 2019, Mr. Jones and Mr. McFarland dissolved the partnership resulting in Mr. McFarland becoming the sole owner of Basement Solutions.[3]  The parties filed the Partnership Dissolution Agreement with the Commonwealth of Pennsylvania.[4]

But then Mr. Jones began to act contrary to Mr. McFarland's understanding of their separation. In November 2019, Mr. McFarland learned Mr. Jones closed out both of Basement Solutions' accounts at Wells Fargo without providing the Partnership Dissolution Agreement to Wells Fargo.[5]  Mr. McFarland made a first attempt at providing Wells Fargo with the Dissolution Agreement, but it did not accept.[6]  He returned to the Wells Fargo Phoenixville branch and the manager then accepted the paperwork showing he solely owned Basement Solutions.[7]

Mr. Jones then went to the Wells Fargo Exton branch to open accounts under Basement Solutions' name but did not provide the "full paperwork."[8]  Mr. McFarland learned about Mr. Jones's actions from a voicemail left by Kathy Reed, a bank employee with the Wells Fargo Exton branch.[9]  The Wells Fargo Exton branch opened up the two accounts for Mr. Jones and transferred money from the two closed Phoenixville branch accounts.[10]  Basement Solutions (through Mr. McFarland) could not access these two new accounts Mr. Jones opened at the Exton branch.[11] Mr. Jones had sole authorization to access and distribute money from these new accounts opened at the Exton branch.[12]  Mr. McFarland feared Mr. Jones would attempt to open

other accounts in Basement Solutions' name and became concerned Wells Fargo would allow him to do so.[13]

On December 2, 2019, Mr. McFarland went to the Wells Fargo Pottstown branch to open a new business account for Basement Solutions to keep the company operational.[14]  He told Wells Fargo employee Imane Saif of his plan.[15] Mr. McFarland filled out an authorization form to set up the account for Basement Solutions with Mr. Saif.[16]  Wells Fargo declined his request to open an account for Basement Solutions without explanation.[17]

Two days later, Mr. McFarland contacted Ms. Reed from the Exton branch.[18] Mr. McFarland's counsel, Francis Walsh, also sent an email to the manager of the Phoenixville branch, notifying Wells Fargo Mr. Jones had established an account, either under his name or Basement Solutions' name, and stole from Basement Solutions' original two accounts at the Phoenixville branch.[19]  The email addressed to the manager, Jonathan Duncan, referenced a call between Mr. Duncan and Attorney Walsh.[20] Attorney Walsh claimed Wells Fargo facilitated the theft, and Wells Fargo "should immediately freeze [the Exton branch] account . . . [and] advise [Mr.] Jones to reimburse the account for any monies withdrawn from that account since its establishment."[21]  He also requested Mr. Jones return additional money if the assets of Basement Solutions' account when closed are greater than the assets in the new account opened under the company's name at the Exton Branch.[22]  By December 12, 2019, Mr. Jones had transferred all monies from the two original Basement Solutions' accounts to the accounts he opened at the Exton branch, leaving the original accounts with zero balance.[23]

In March 2020, Wells Fargo's lawyer explained Mr. Jones had been an authorized signer of Basement Solutions' original two bank accounts at the Phoenixville branch as of December 12, 2019.[24]  Basement Solutions claims it took the necessary steps to attempt to remove Mr.

Jones from the bank accounts, but Wells Fargo refused even though Mr. Jones had not owned units in the entity since September 2019.[25]  Because Wells Fargo did not remove Mr. Jones from the accounts, Basement Solutions claims it incurred significant fees and penalties and could not pay its vendors, employees, or outstanding debt.[26]  After December 12, 2019, Basement Solutions continued to incur penalties and fees from Wells Fargo for various overdrafts from Mr. Jones's transfer of monies from the original bank accounts to two accounts opened at the Exton branch to which neither Mr. McFarland nor Basement Solutions had access.[27]

## II.    Analysis

Basement Solutions sued Wells Fargo alleging Wells Fargo breached its fiduciary duty by failing to take the necessary steps to remove Mr. Jones from the original bank accounts and allowing him to open two new bank accounts in its name at the Exton branch.[28]  Wells Fargo never did an internal investigation as to the true owner of Basement Solutions after September 2019 and neither required Mr. Jones to provide verification nor checked with the Commonwealth State Department to verify ownership.[29]  Basement Solutions claims Wells Fargo had an obligation to remove Mr. Jones from the two original accounts after Mr. McFarland notified it Mr. Jones no longer owned the business on November 30, 2019.[30]

Wells Fargo now moves to dismiss Basement Solutions' breach of fiduciary duty claim for failure to state a claim arguing a bank does not owe a fiduciary duty to its customer.[31]  Basement Solutions elected to not respond.  While we may grant Wells Fargo's motion as uncontested under Local Rule 7.1(c), we alternatively grant Wells Fargo's motion on the merits because Basement Solutions fails to plead facts establishing a fiduciary relationship existed between it and Wells Fargo.  We dismiss its complaint without prejudice to timely filing an amended complaint if it can state a claim consistent with Rule 11.

**A.      We may grant Wells Fargo's motion to dismiss as uncontested.**

Basement Solutions chose not to timely oppose Wells Fargo's Motion to dismiss its Complaint.  Under Local Rule 7.1(c), "[f]ailure to respond to a properly filed motion within the time set forth in this rule permits the court to treat any motion as uncontested except as provided under Fed. R. Civ. P. 56."[32]  "When a party fails to respond . . . we may grant the motion [to dismiss] as uncontested."[33]

Wells Fargo moved to dismiss Basement Solutions' breach of fiduciary duty claim on January 15, 2021.[34]  Basement Solutions could respond until January 29, 2021.[35]  Basement Solutions failed to respond to Wells Fargo's motion. Because Basement Solutions failed to respond, we grant Wells Fargo's uncontested Motion to dismiss under Local Rule 7.1(c) but without prejudice to timely amend.

**B.      Basement Solutions fails to plead a fiduciary relationship with Wells Fargo.**

Even if Basement Solutions responded to Wells Fargo's motion, we would still dismiss its breach of fiduciary duty claim on the merits.  Basement Solutions claims Wells Fargo breached its fiduciary duty by "failing to take the necessary steps to remove Mr. Jones from the [] bank accounts and allowing him to open up two new bank accounts with [the] Wells Fargo [Exton branch]."[36]  Wells Fargo moves to dismiss, arguing a fiduciary relationship did not exist between it and Basement Solutions.[37] We agree.

To plead a claim for breach of fiduciary duty, plaintiffs must first show a fiduciary or confidential relationship existed between themselves and the defendant.[38]  "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said

that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest."[39]

Under Pennsylvania law, "[a] bank/customer relationship is not a fiduciary one."[40] "In order for a fiduciary relationship to arise, there must be control exercised by the bank over the customer's business affairs."[41] A fiduciary duty exists where "there is a 'special relationship,' which is one 'involving confidentiality, the repose or special trust or fiduciary responsibilities'"[42] and "generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence of the other.'"[43] A fiduciary relationship does not exist where parties "simply enter[] into a commercial, arms-length contract with one another."[44]

In *Deckard v. Emory*, a mother had two accounts with a bank, which she used to deposit and withdraw funds for both herself and a business she allegedly owned with her son.[45] Her son claimed his sister and brother-in-law stole cash receipts from the business, gained access to the accounts and assets of the business, and withdrew money from his mother's personal accounts.[46] The mother passed away and in her will named the son a fifty percent beneficiary of the estate and his sister as the executrix.[47] Although the son claimed only he and his mother ran the business, the Philadelphia Orphans Court held he failed to prove he had a partnership interest in the business and held the sister had legal title to the estate – including the business.[48] The Orphans Court ordered the son handle "day-to-day business related decisions and operations" and the sister have "final control over all business operations and decisions."[49] The son claimed the sister began unlawfully using his mother's employee identification number in the administration of the bank accounts for the estate and the business.[50] The son alleged he

"warned" the bank about these concerns.[51]  He sued the bank claiming it breached its fiduciary duty by (1) ignoring plaintiff's warnings his sister unlawfully used his mother's employer identification number, (2) freezing the son's business accounts, and (3) authorizing his sister to "cease all of [his] funds in said accounts."[52]  The son claimed the bank had an "obligation to exercise a duty of ordinary care when opening and overseeing the administration of [its] client accounts."[53]  Judge DuBois held to establish a fiduciary relationship between a bank and a customer, "there must be control exercised by the bank over the customer's business affairs."[54] Because the son failed to plead facts showing the bank exercised any control over his business affairs, Judge DuBois dismissed the claim.[55]

In *Bucci v. Wachovia Bank*, a business owner sued Wachovia Bank after he learned one of his employees has been stealing from the business by altering checks and cashing them without authorization at the Linwood Wachovia.[56]  The business owner sued Wachovia for fraud-by-omission, alleging the bank owed him a duty of disclosure and committed fraud by failing to inform him of his employee's activities.[57]  Judge Brody found banks, as a general matter, do not owe fiduciary duties to its customers unless the bank has "substantial control" over the business's affairs.[58]  As the business owner did not allege Wachovia exerted control over his affairs, she dismissed the fraud-by-omission claim.[59]

Just like in *Deckard* and *Bucci*, Basement Solutions fails to plead facts showing Wells Fargo exercised control over its business affairs.  Because the relationship between a bank and customer is not in itself a fiduciary relationship, Basement Solutions must plead Wells Fargo exercised control over its business, which requires more than maintenance of its bank accounts, to state a claim for breach of fiduciary duty.  Basement Solutions does not allege facts allowing us to plausibly infer Wells Fargo controlled its business affairs.  It only pleads having two

accounts with Wells Fargo, and nothing more tending to show a "confidential relationship" or Wells Fargo's "power to take advantage of or exercise [of] undue influence."[60]   We dismiss Basement Solutions' claim with leave to amend if it can state a claim consistent with Rule 11.[61]

## III.    Conclusion

We dismiss Basement Solutions' Complaint with leave to timely amend.

---

[1] ECF Doc. No. 1-2 at 22; *Id.* at 17 ¶ 3.

[2] *Id.* at 17 ¶ 3.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 4.

[5] *Id.* at 18 ¶ 5.

[6] *Id.*

[7] *Id.*

[8] *Id.* ¶ 6.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 7.

[14] *Id.* ¶ 8.

[15] *Id.*

[16] *Id.*; *Id.* at 25-26.

[17] *Id.*

[18] *Id.* at 18 ¶ 9.

[19] *Id.*; *Id.* at 27-28.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 19 ¶ 16.

[24] *Id.* ¶ 19.

[25] *Id.* at 20 ¶ 20.

[26] *Id.* ¶ 22.

[27] *Id.* ¶ 23.

[28] *Id.* ¶ 24.

[29] *Id.* at 19 ¶¶ 11-13.

[30] *Id.* ¶ 15.

[31] ECF Doc. No. 2 at 3. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "[I]n ruling on a motion to dismiss, [courts] may consider 'matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.'" *Pension Tr. Fund for Operating Engineers v. Morg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 271 (3d Cir. 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[32] Loc. R. Civ. P. 7.1(c); *See e.g. McCracken v. Lancaster City Bureau of Police*, No. 06-4958, 2007 WL 551511, at *1 (E.D. Pa. Feb. 15, 2007) (Judge Judge Stengel chose to "grant defendants uncontested motion under Local Rule of Procedure 7.1(c)" because plaintiff failed to respond to defendant's motion to dismiss); *Imani v. U-Haul Int'l*, No. 07-2231, 2007 WL 2595564, at *1 n.1 (E.D. Pa. Sept. 4, 2007) ("Since Plaintiff has failed to file a response within 14 days after that date as required by Local Rule of Civil Procedure 7.1(c), the court will exercise its authority to grant Defendants' motion as uncontested.").

[33] *Stewart v. United States*, No. 17-3691, 2018 WL 899110, at *4 (E.D. Pa. Feb. 15, 2018) (Judge Bartle dismissed claims where no response filed).

[34] ECF Doc. No. 2.

[35] Loc. R. Civ. P. 7.1(c); *see H2L2 Architects/Planners, LLC v. Tower Invs., Inc.,* No. 12-6927, 2013 WL 373281, at *3 n.1 (E.D. Pa. Jan. 31, 2013) ("Local Rule 7.1(c) affords parties fourteen days to respond to a motion to dismiss.").

[36] ECF Doc. No. 1-2 at 20 ¶ 24.

[37] ECF Doc. No. 2 at 4-6.

[38] *Baker v. Family Credit Counseling Corp*., 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) (citing *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005)).

[39] *Carter P. v. Pook & Pook*, LLC No. 14-5715, 2017 WL 6497340, at *8 (E.D. Pa. Dec. 19, 2017) (citing *Baker*, 440 F. Supp. at 571) (quoting *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966))).

[40] *Deckard v. Emory*, No. 17-5182, 2020 WL 3960421, at *5 (E.D. Pa. July 13, 2020) (citing *Waye v. Commonwealth Bank*, 846 F. Supp. 321, 325 (M.D. Pa. 1994)).

[41] *Id.* (quoting *Bucci v. Wachovia Bank*, N.A., No. 08-1478, 2009 WL 1740503, at *3 (E.D. Pa. June 17, 2009)); *see also First Fed. Sav. & Loan Ass'n of Hazleton v. Office of State Treasurer*, 669 A.2d 914, 915 (Pa. 1995) ("It is well established that the legal relationship between a financial institution and its depositors is based on contract, and that the contract terms are contained in the signature cards and deposit agreements.").

[42] *Grimm v. Discover Fin. Servs*., No. 08-747, 2008 WL 4821695, at *13 (W.D. Pa. Nov. 4, 2008) (citing *eToll Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa.Super.2002)).

[43] *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998).

[44] *Grimm*, 2008 WL 4821695, at *13 (citing *eToll*, 811 A.2d at 14).

[45] No. 17-5182, 2020 WL 3960421, at *1 (E.D. Pa. July 13, 2020).

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*, at *2.

[51] *Id.*

[52] *Id.*, at *5.

[53] *Id.*

[54] *Id.*

[55] *Id.;* The son is now appealing on other unrelated grounds, arguing the court abused its discretion by not allowing him to amend his complaint and add additional defendants. *See* Concise Summary of the Case, *Deckard v. Emory*, No.29-2664 (3d Cir. Sept. 28, 2020), ECF Doc. No. 18.  The son's appeal does not appear to contest the dismissal of claims against the bank, and the bank does not appear to be a party to the appeal. *Id.*

[56] *Bucci v. Wachovia Bank*, 591 F. Supp. 2d 773 (E.D. Pa. 2008).

[57] *Id.* at 783.

[58] *Id.* at 783-84.

[59] *Id.* at 784.

[60] *Valley Forge Convention & Visitors Bureau*, 28 F. Supp. 2d at 952.

[61] "A court must grant leave to amend absent 'undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Acosta v. Democratic Committee*, 288 F. Supp. 3d 597 (E.D. Pa. 2018) (quoting *Mullin v. Balicki*, 873 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).